IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JENNIFER L.,[1]                                         Case No. 3:23-cv-01591-JR

        Plaintiff,

                                    OPINION AND ORDER

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

RUSSO, Magistrate Judge:

       Plaintiff Jennifer L. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, defendant's decision is reversed, and this case is remanded for further proceedings.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

## BACKGROUND

Born in 1982, plaintiff alleges disability beginning April 8, 2021,[2] due to depression, back pain, migraines, anxiety, seizures, syncope, asthma, pain, nausea, tachycardia, and polycystic ovary syndrome ("PCOS"). Tr. 69. Plaintiff filed her DIB application on April 8, 2021. *Id.* Her application was denied initially and upon reconsideration. Tr. 76, 93-94. Plaintiff then requested a hearing which commenced before an Administrative Law Judge ("ALJ") on June 22, 2022. Tr. 33. The ALJ issued a decision finding plaintiff not disabled on August 3, 2022. Tr. 28-29.  After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

## THE ALJ'S FINDINGS

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date. Tr. 20. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: "paroxysmal nonepileptic spells, psychogenic seizures, migraines, morbid obesity, anxiety, [and] depression." *Id.* At step three, the ALJ concluded that plaintiff did not have an impairment that meets or medically equals a listed impairment. Tr. 21.

The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work except that she:

> Can occasionally climb ramps and stairs, but should not climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should have no more than occasional exposure to hazards (such as unprotected heights and exposed moving mechanical parts. She has sufficient concentration, persistence, and pace to complete simple tasks for a normal workday and workweek.

Tr. 22.

---

[2] Plaintiff initially alleged disability as of June 1, 2020, but amended her onset date at the hearing to the protective filing date. Tr. 38.

At step four, the ALJ concluded that plaintiff is able to perform her past relevant work as a storage facility rental clerk. Tr. 27. In the alternative, the ALJ found that other jobs exist in significant numbers in the national economy that plaintiff could perform despite her impairments, such as "office helper," "price marker," and "tanning salon attendant." Tr. 28.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) discrediting her subjective symptom testimony; (2) rejecting the medical opinion of Dr. Kathryn Rompala, M.D.; and (3) failing to include all of plaintiff's limitations in her RFC.  Pl.'s Opening Br. 4 (doc. 11).

## I.    Plaintiff's Testimony

Plaintiff contends the ALJ erred by discrediting her testimony concerning the extent of her migraine headaches. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (internal citation omitted). A general assertion the claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted).

Thus, in formulating the RFC, the ALJ is not tasked with "examining an individual's character" or propensity for truthfulness, and instead assesses whether the claimant's subjective symptom statements are consistent with the record as a whole. SSR 16-3p, *available at* 2016 WL

1119029. If the ALJ's finding regarding the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

At the hearing, plaintiff testified that her last job ended in December 2020 because she was frequently absent due to her migraines. Tr. 42. Plaintiff explained that her migraines and seizures occur often, and she feels it is not safe for her to sustain fulltime employment. *Id.* Regarding her migraine treatment, plaintiff testified she takes propranolol but "it does not help very much," and she recently started Botox treatment but it "hasn't been helpful for [her] yet." Tr. 43. Plaintiff explained that when she has a migraine, she cannot do anything, and she must be in a dark, quiet room. Tr. 49.

After summarizing her hearing testimony, the ALJ determined that plaintiff's medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 23.

### A. Plaintiff's Migraine Treatment

When discounting plaintiff's testimony regarding her migraine headaches, the ALJ first discussed plaintiff's treatment. *Id.* The ALJ acknowledged that plaintiff had a history of migraine headaches before the period at issue and was noted to be having daily migraine headaches in early 2021. *Id.* (citing Tr. 227, 249, 255). The ALJ reasoned "it was noted that she was only rarely using pain medication for her headaches and had otherwise routine treatment for migraines." *Id.* (citing Tr. 349). The ALJ discussed how plaintiff had a gap in treatment given that she initially saw a neurologist in May 2021, but did not see the neurologist again until March 2022. *Id.* (citing Tr.

349, 855). The ALJ concluded that plaintiff's "limited history of specialized and emergency treatment during the period at issue. . . supports finding that [plaintiff's] migraines would not prevent her from working fulltime at the light exertional level." Tr. 23-24.

Lack of treatment and failure to follow a prescribed course of treatment are clear and convincing reasons for rejecting symptom testimony. *See Fair v. Bowen*, 885 F.2d 597, 603–04 (9th Cir. 1989) (unexplained, or inadequately explained failure to seek treatment and failure to follow a prescribed course of treatment can constitute clear and convincing reasons for discounting a claimant's credibility regarding his or her symptoms). If an individual fails to follow prescribed treatment that might improve symptoms, an ALJ may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. 2017 WL 5180304 (Soc. Sec. Ruling 16-3p Titles II & Xvi: Evaluation of Symptoms in Disability Claims, SSR 16-3P (S.S.A. Oct. 25, 2017)). However, an ALJ may not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. *Id.* The ALJ has an independent duty to develop the record fully and fairly and to assure that the claimant's interests are considered. *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). Ambiguous evidence or findings that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry. *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998).

Here, the record supports the ALJ's conclusion that plaintiff took ten months to follow-up with a neurologist. However, the record suggests that in March 2022 plaintiff requested a referral to a different neurologist because she "fe[lt] like she is not getting a proper amount of patient

care." Tr. 856. Plaintiff was then scheduled to see Mitchell Finch, M.D. on June 22, 2022,[3]

nearly three months after her request. Tr. 857. It is not clear from the record whether there is a

good faith reason why plaintiff failed to seek treatment for her migraines from May 2021 to

March 2022, and the ALJ failed to inquire about this. Furthermore, the ALJ's assumption that

plaintiff was not experiencing migraine headaches because she did not seek specialized

treatment, is unsupported by the record. *See* Tr. 43, 349 (plaintiff started Botox treatment in May

2022 given that other medications were not working but testified the Botox treatment "hasn't

been helpful for [her] yet.") Accordingly, the ALJ erred in failing to develop the record

regarding possible reasons why plaintiff took almost a year to follow up with a neurologist.

Furthermore, the record does not support the ALJ's contentions that plaintiff's migraine

treatment is "routine" and that she "only rarely us[ed] pain medication." Tr. 23 (citing Tr. 349).

A claimant's amount of treatment is an important indicator of the intensity and persistence of the

claimant's symptoms, and evidence of conservative treatment is "sufficient to discount a

claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742,

750-51 (9th Cir. 2007); 20 C.F.R. § 404.1529(c)(3). The treatment note the ALJ cited to support

this contention is from May 2021 where Dr. Finch, plaintiff's neurologist, noted her migraines

were occurring five times a week and that propanol did not help with her symptoms. Tr. 349. Dr.

Finch prescribed new medications including amitriptyline and Nurtec and discussed Aimovig

injections or Botox as additional future options. *Id.* This record does not support a finding of

conservative medical treatment. *See, e.g.*, *Nichole K. v. Saul*, 2020 WL 2393854, *5-6 (D.

---

[3] The record reads that on March 22, 2022, plaintiff was scheduled for a "three month virtual follow up with Dr. Finch on or around 6/22/2023 for migraines and seizures." The Court assumes this is a typographical error and should instead read "6/22/22" given it was a three month follow up appointment from March 2022.

Or. May 11, 2020) (explaining that a claimant receiving Botox injections after having tried and failed several migraine medications is not considered conservative treatment, especially given that the record fails to show that more aggressive options were available or appropriate). The record further does not demonstrate improvement in her condition with treatment. *See, e.g.*, Tr. 349, 844-847 (plaintiff started Botox treatment for migraines, which her neurologist recommended as a future option if her other prescriptions were unsuccessful).

Additionally, the fact that plaintiff has not sought emergent or urgent treatment for a chronic health problem does not undermine her hearing testimony, especially given that the record reflects significant care associated with her migraine headaches. *Scott H. v. Comm'r, Soc. Sec. Admin.*, 2023 WL 4249276, *4 (D. Or. June 29, 2023) ("lack of inpatient medical care does not render claimant's mental health treatment 'conservative") (citation and internal quotations omitted). In this context, "conservative treatment" is not necessarily the inverse of aggressive treatment, and the fact that headaches/migraines are not susceptible to invasive or surgical correction does not mean that plaintiff has not been diligent in attempting to mitigate and treat her symptoms. *See Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) ("[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated"). The Court recognizes plaintiff did seek emergency treatment for her migraines, but this treatment occurred outside of the relevant period from October 2019 to November 2020. Tr. 410, 438, 457, 476, 516, 568. In June 2020, plaintiff presented to the ER three times in one week due to her migraine headaches. Tr. 505. Plaintiff did not seek emergency department treatment for her migraines during the relevant period, however it remains unclear as to how much her migraine symptoms improved during the relevant period, given that she still pursued Botox treatment in May 2022. The ALJ failed to conduct a proper analysis in regard to this issue.

Therefore, the ALJ was not justified on relying on plaintiff's treatment history as a basis to discount plaintiff's subjective symptom testimony.

### B. Objective Medical Evidence

The ALJ is instructed to evaluate objective evidence in considering a claimant's symptom allegations. 20 C.F.R. § 416.929(c)(2) ("Objective medical evidence ... is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms[.]"). "When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (emphasis in original); *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (affirming the ALJ's credibility finding when the plaintiff's testimony of weight fluctuation was inconsistent with the medical record). The lack of objective medical evidence is insufficient, by itself, to justify discounting a claimant's testimony. *See, e.g., Tammy S. v. Comm'r Soc. Sec. Admin.*, 2018 WL 5924505, at *4 (D. Or. Nov. 10, 2018) (citing *Reddick v. Chafer*, 157 F.3d 715, 722 (9th Cir. 1998)) ("the Commissioner may not discredit [a] claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence."). When coupled with other permissible reasons, however, lack of objective medical evidence to support a claimant's allegations may be used to discount a claimant's testimony. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197-98 (9th Cir. 2004).

Here the ALJ reasoned that plaintiff "sometimes denied headaches when reporting symptoms to her providers, which suggests her headaches are not as frequent as alleged." Tr. 23 (citing Tr. 862, 884, 924). The ALJ concluded that "the limited observations of pain behavior, the limited history of specialized and emergency treatment during the period at issue . . . and the

denials of headaches at times when reporting symptoms to providers, supports finding that [plaintiff's] migraines would not prevent her from working fulltime at the light exertional level." Tr. 23-24.

The ALJ mischaracterized the record. The three citations the ALJ used to support the contention that plaintiff "denied headaches" were taken out of context given that plaintiff was seeking treatment for ailments unrelated to her headaches. *See Reddick*, 157 F.3d at 722-23. (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). More specifically, these citations are from three separate incidents where plaintiff sought emergency department treatment for severe chest pain, accidental Tylenol overdose for cold and flu symptoms, and shortness of breath. Tr. 862, 884, 924. Plaintiff denying headaches on three occasions while seeking treatment for unrelated ailments is not substantial evidence that contradicts her testimony regarding the severity and frequency of her migraine headaches. *Silvia F. v. Saul*, 2019 WL 13071984, *6 (C.D. Cal. Aug. 16, 2019) (explaining how treatment notes for unrelated conditions are largely immaterial to conclusions made about a claimant's disabling impairments that are at issue). Furthermore, an ALJ may not simply cherry-pick evidence to support the conclusion that a claimant is not disabled; rather, the ALJ must consider the evidence as a whole. *See Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) ("[T]he ALJ selectively relied on some entries in [the claimant's] records ... and ignored the many others that indicated continued, severe impairment."); *see also Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) (noting the cyclical nature of mental health diagnoses and instructing caution in drawing inferences based upon reports of improvements during treatment). It is especially evident that the ALJ cherry-picked evidence to support her conclusion given that there are several medical

records demonstrating that plaintiff struggled with migraine headache symptoms during appointments. Tr. 312, 320, 349-50, 354, 408-10.

Therefore, based on the above, the ALJ improperly discounted plaintiff's subjective symptom testimony based on the objective medical evidence.

### C. Activities of Daily Living

The ALJ also discussed plaintiff's activities of daily living when discounting her subjective symptom testimony. Tr. 25. Specifically, the ALJ discussed a "third party statement" from plaintiff's friend, Kristina Hill. *Id.* (citing Tr. 211). The ALJ discussed how Ms. Hill "reported spending every weekend with [plaintiff] going to dinner, shopping, and being outside when the weather was nice." *Id.* The ALJ found Ms. Hill's report "inconsistent with [plaintiff's] testimony of going shopping only a few times a year due to her symptoms." *Id.* The ALJ found Ms. Hill's report that plaintiff "spent time with children, nieces, and nephews, and playing games. . . . inconsistent with plaintiff's testimony of not playing games." *Id.*

The ALJ failed to consider Ms. Hill's statement in its entirety. In this same statement, Ms. Hill explains how plaintiff has experienced a decline in health specifically via seizures, "fainting spells," and migraines. Tr. 211. Ms. Hill stated, "over the last year especially, activities with walking standing, etc. have become more difficult" and "[h]er seizures often come out of nowhere, often resulting in myself or her husband to quickly get behind her and guide her to the ground so she does not get hurt." *Id.* Ms. Hill explained that plaintiff's "migraines often come on very quickly and painfully, making small tasks nearly impossible to complete." *Id.* The ALJ mischaracterized the record when discussing Ms. Hill's report. *See Reddick*, 157 F.3d at 722-23. (ALJ's "paraphrasing of record material" was "not entirely accurate regarding the content and tone of the record" and did not support an adverse credibility finding). An ALJ may not simply

cherry-pick evidence to support the conclusion that plaintiff is not disabled; rather, the ALJ must consider the evidence as a whole. *Holohan*, 246 F.3d at 1207. It is evident the ALJ selectively relied on portions of Ms. Hill's third-party statement and then mischaracterized the evidence in its entirety to support her conclusion that plaintiff is not disabled.

Furthermore, a plaintiff need not be utterly incapacitated or "vegetate in a dark room in order to be eligible for benefits." *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Neither plaintiff's shopping trips, nor her ability to play games, write, or socialize with her friends, provides evidence that these activities are transferrable to a work environment. *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Because the ALJ failed to explain how plaintiff's daily activities undermined her testimony, this reason fails to provide a specific, clear, and convincing reason to discount her subjective symptom testimony.

In sum, the ALJ failed to provide a clear and convincing reason, supported by substantial evidence, for affording less weight to plaintiff's subjective symptom testimony. The ALJ's decision is reversed as to this issue.

## II.    Medical Opinion Evidence

Plaintiff next asserts the ALJ improperly discredited the opinion of Dr. Rompala. Where, as here, the plaintiff's application is filed on or after March 27, 2017, the ALJ is no longer tasked with "weighing" medical opinions, but rather must determine which are most "persuasive." 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). "To that end, there is no longer any inherent extra weight given to the opinions of treating physicians . . . the ALJ considers the 'supportability' and 'consistency' of the opinions, followed by additional sub-factors, in determining how persuasive

the opinions are."[4] *Kevin R. H. v. Saul*, 2021 WL 4330860, *4 (D. Or. Sept. 23, 2021). The ALJ

must "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how

[they] considered the supportability and consistency factors." *Id.* At a minimum, "this appears to

necessitate that an ALJ specifically account for the legitimate factors of supportability and

consistency in addressing the persuasiveness of a medical opinion." *Id.*

In November 2018, Dr. Rompala became plaintiff's primary care provider which

included managing her seizures, migraines, anxiety, depression, and her medications. Tr. 1489.

In June 2022, Dr. Rompala completed a "treating provider questionnaire" at the request of

plaintiff's counsel, in which she opined that plaintiff would be off task greater than 20 percent of

the workday and would miss at least two days of work per month. Tr. 1490. Dr. Rompala

indicated that plaintiff experiences migraines three to four times per week, and that medication

treatment has relieved "50%" of her pain. Tr. 1489. Dr. Rompala stated plaintiff experiences

seizures five to six times a week due to a functional neurological disorder, and that medication

treatment has been ineffective. *Id.*

The ALJ determined that Dr. Rompala's opinion was "not persuasive." Tr. 26.

Specifically, the ALJ reasoned: "The treatment notes from Dr. Rompala do not show

observations of pain behavior from migraines or seizure episodes during appointments to support

her opinion." Tr. 27-28 (citing Tr. 886-87, 889-90, 893-94, 911-13, 965-66). The ALJ's

reasoning for discounting Dr. Rompala's opinion is very similar to her reasoning for rejecting

---

[4] As the Ninth Circuit recently explained, "[u]nder the revised regulations . . . a medical source's
relationship with the claimant is still relevant when assessing the persuasiveness of the source's
opinion." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). The new regulations nonetheless
"displace our longstanding case law requiring an ALJ to provide" different levels of reasoning
(i.e., "clear and convincing" or "specific and legitimate") based on a hierarchy of medical sources.
*Id.* at 787.

plaintiff's subjective symptom testimony about her migraines. The ALJ found it significant that "Dr. Rompala's opinion is inconsistent with the limited observations of pain behavior, the limited history of specialized and emergency treatment during the period at issue, the relatively routine treatment for migraines before the Botox injections [in] May 2022, the denials of headaches at times when reporting symptoms to providers, lack of emergency treatment for seizures or injuries from seizures, the lack of observations of seizure problems by providers, the limited specialized treatment for seizure during the period at issue, and the lack of CBT for nonepileptic seizures." Tr. 27 (citing Tr. 846, 855-56, 862, 866, 884, 894, 910, 913, 920, 924, 959).

With respect to plaintiff's migraine headaches, as explained above, the ALJ's reasoning for discounting plaintiff's subjective symptom testimony was not supported by substantial evidence. This same reasoning provided by the ALJ is not an adequate reason for discounting Dr. Rompala's opinion regarding plaintiff's migraine headaches.

Regarding plaintiff's seizures, the ALJ's assertion that plaintiff lacks "emergency treatment for seizures and injuries from seizures" is a mischaracterization of the record. Although outside the relevant period, plaintiff did receive emergency treatment for seizures in November 2020, January 2021, and March 2021. Tr. 400, 407, 438. Plaintiff was hospitalized for multiple nights for an epilepsy evaluation in March 2021, only one month prior to plaintiff's alleged onset date of April 1, 2021.  Tr. 312-19. Although this hospital stay was outside the relevant period, "medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis." *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988).

The ALJ also mischaracterized the record by stating that plaintiff had "limited specialized treatment for seizures during the period at issue." Tr. 27. Plaintiff's seizures began in the fall of

2020, and she was prescribed Levetiracetam/Keppra, an antiepileptic medication. Tr. 312, 353. However, once her seizures were determined to be nonepileptic in March 2021 and plaintiff was not experiencing relief from her medication, her Levetiracetam prescription was discontinued. *See* Tr. 350. Since epilepsy was ruled out as a cause of her seizures, plaintiff was referred to a clinical psychologist and recommended cognitive behavioral therapy in May 2021. Tr. 348. In January 2022, plaintiff's anxiety medication was increased because "neurology thinks [her] seizures are from anxiety." Tr. 887. Plaintiff's neurologist recommended cognitive behavioral therapy again in March 2022, but plaintiff expressed she was having difficulty finding a therapist. Tr. 855. In May 2022, plaintiff's neurologist ordered a 24-hour ambulatory EEG "given [her] increase in seizures." Tr. 844. It is clear the ALJ mischaracterized the record by asserting that plaintiff had limited specialized treatment during the period at issue.

The ALJ's determination that the medical opinion of Dr. Rompala is unpersuasive is not backed by substantial evidence and therefore constitutes reversible legal error.

### III.    Plaintiff's RFC

Finally, plaintiff argues the ALJ failed to account for her seizures in the RFC assessment. Pl.'s Opening Br. 13-14. Specifically, plaintiff contends that "the ALJ's decision appears to discount [her] seizures because they are non-epileptic, without considering that psychogenic seizures are real and debilitating." *Id.* at 13. This allegation of error amounts to a recapitulation of plaintiff's challenges to the ALJ's rejection of plaintiff's subjective symptom testimony and the weight given to the medical opinion evidence.

The RFC is the maximum that a claimant can do despite his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. In determining the RFC, the ALJ must consider limitations imposed by all of a claimant's impairments, even those that are not severe, and evaluate "all of

the relevant medical and other evidence," including the claimant's testimony. SSR 96-

8p, available at 1996 WL 374184. Limitations supported by substantial evidence must be

incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001).

The ALJ reasoned "the lack of emergency treatment for seizures or injuries from

seizures, the lack of observations of seizure symptoms by providers, the limited specialized

treatment for seizures during the period at issue, and the lack of CBT for nonepileptic seizures,

supports finding that [plaintiff's] seizures would not prevent her from working fulltime at the

light exertional level." Tr. 24. However, as plaintiff contends, Dr. Rompala explained that

plaintiff's seizures were "a type of functional neurological disorder" and explained the seizures

were "due to a problem with the functioning of the nervous system and thought to be the result of

the brain's inability to send and receive signals properly, rather than the disease." Pl.'s Opening

Br. 13 (citing Tr. 839). Plaintiff's neurologist, Dr. Finch, clearly stated that her seizure symptoms

"are real." Tr. 844. The ALJ erred in evaluating plaintiff's subjective symptom testimony and the

medical opinion of Dr. Rompala, and case law dictates that such an error was

harmful. *See Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (VE's response to an

incomplete hypothetical has "no evidentiary value") (citations and internal quotations omitted).

Therefore, the ALJ's formulation of plaintiff's RFC was error.

### IV. Remedy

The decision whether to remand for further proceedings or for the immediate payment of

benefits lies within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1176-78 (9th Cir.

2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is

appropriate when no useful purpose would be served by further administrative proceedings or

when the record has been fully developed and the evidence is insufficient to support the

Commissioner's decision. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1090-1100 (9th Cir. 2014). The court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled. *Strauss v. Comm'r of Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011); *see also Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

As discussed herein, the ALJ committed harmful legal error by failing to properly evaluate plaintiff's subjective symptom testimony and Dr. Rompala's opinion, and when determining plaintiff's RFC. Further proceedings would nonetheless be useful regarding the extent of plaintiff's migraines and seizures, such that crediting the opinion of Dr. Rompala as true and/or remanding for the immediate payment of benefits (either under a listing or otherwise) is improper.

On one hand, it is undisputed that plaintiff's migraine headaches and seizures are longstanding and have persisted at significant levels since 2018. On the other hand, the record is unclear as to the extent of improvement and stabilization from prescribed medications. It is also unclear why plaintiff was not treated for migraines from May 2021 to March 2022. The ALJ made no inquiry into this issue nor why plaintiff did not seek cognitive behavioral therapy to treat her seizures. The lack of medical records from July 2022 onwards makes the record ambiguous concerning the progression and limiting effects of plaintiff's symptoms, especially given that the alleged onset date is April 1, 2021, and plaintiff only started Botox treatment for her migraines in May 2022. The majority of plaintiff's medical records demonstrating immense migraine and seizure symptoms are from 2018 to 2021, with plaintiff's emergency department treatment and hospitalizations occurring in from October 2019 to March 2021. Tr. 312-19, 400, 407, 438.

As such, further proceedings are required to resolve this case. *See Treichler*, 775 F.3d at 1099 (except in "rare circumstances," the proper remedy upon a finding of harmful error is to remand for further administrative proceedings). Given the unknown level of improvement with Botox treatment, coupled with the complex and longstanding nature of plaintiff's migraine headaches and seizures, developing the record as to these issues would be helpful. Therefore, upon remand, the ALJ must develop the record and, if necessary, reweigh the medical and other evidence of record, reformulate plaintiff's RFC, and obtain additional VE testimony.

## CONCLUSION

For the foregoing reasons, defendant's decision is REVERSED, and this case is REMANDED for further proceedings.

IT IS SO ORDERED.

DATED this 22nd day of August, 2024.


_____
/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge